1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ENVIRONMENTAL
TRANSPORTATION OF NEVADA,
LLC, et al.,

                    Plaintiffs,

        v.

MODERN MACHINERY CO., INC., et
al.,

                    Defendants.

CASE NO. C18-5445 BHS

ORDER

THIS MATTER is before the Court on Plaintiff Environmental Transport of

Nevada's ("ETON") motion for summary judgment on the Komatsu

Defendant/Counterclaimants' ("Komatsu")[1] indemnity counterclaims, Dkt. 238, and on

Komatsu's responsive Motion to Amend its Answer and Counterclaim, Dkt. 248.

        The background of this case has been detailed in a prior order, Dkt. 146, and in

subsequent hearings. In short, Komatsu sought to ship two excavators from its dealer in

Rochester, Washington, Defendant Modern Machinery, to a different Komatsu dealer in

---

[1] Komatsu America Corp ("KAC") and Komatsu Equipment Company ("KEC") are
defendants. *See* Dkts. 1, 27, and 28. For purposes of the pending motions, the distinction
between them is not relevant. The Order uses the singular "Komatsu" for clarity and ease of
reference.

Las Vegas, Nevada. Komatsu listed the shipping job with a broker, non-party, JNI

Logistics, and through JNI, ETON was engaged to transport the excavators. ETON and

its driver, Plaintiff Henry Abadia, picked up the excavators at Modern Machinery, and

Modern Machinery's employee, Defendant Tyler Piles, loaded them onto Abadia's

trailer. The excavators were some two feet over the maximum height permitted on

Washington highways, and the excavators collided with an overpass near Chehalis,

Washington.

The Washington State Department of Transportation ("WSDOT") sued ETON for

the damage to the overpass. Komatsu alleges that ETON's principal, Moe Truman, "sent

WSDOT some case law" in a successful effort to persuade WSDOT to also assert claims

against Komatsu. Komatsu ultimately prevailed in that case. *See* Dkt. 249-1 at 6.

ETON and Abadia also sued Modern Machinery, Piles, and Komatsu in this Court,

asserting that they were responsible for the improper loading. Dkt. 1. Komatsu asserted

an equitable indemnity counterclaim, Dkt. 27 at 16, seeking indemnity for all claims

asserted against Komatsu by third parties, attorneys' fees and costs, and increased

insurance and business expenses. *Id*. at 16–17.

In an earlier round of motions practice, Judge Leighton[2] granted Komatsu's

motion for summary judgment and dismissed all of ETON's claims against it, Dkt. 106,

and denied Komatsu's motion for summary judgment on its indemnity claim against

ETON, Dkt. 107. *See* Dkt. 146. The indemnity claim addressed in Komatsu's motion was

_____

[2] The case was transferred to the undersigned following Judge Leighton's retirement in August 2020. Dkt. 184.

a contractual one, based on what Komatsu claimed was a provision in the Broker/Carrier Agreement between JNI (the broker) and ETON. Dkt. 107 at 2, 5. Judge Leighton denied that motion because the existence of the contract was a question of fact precluding summary adjudication:

> Komatsu provides conflicting evidence as to whether the contract ever existed. It admits that neither of the parties to the contract has produced it, but it also offers testimony from one party that it *must* have been executed. Quite simply, the motion is self-defeating as the evidence presented raises a genuine issue of fact material to the relief sought. Komatsu's Motion for Summary Judgment on its affirmative indemnity claim is **DENIED**.

Dkt. 146 at 12.

ETON now seeks summary judgment on Komatsu's contractual and equitable indemnity claims. Dkt. 238. In response, and to "conform the pleadings to the facts," Komatsu seeks to amend its Answer and Counterclaims to formally articulate that it asserts both a contractual indemnity claim and an equitable indemnity claim, the former based on the Broker/Carrier Agreement. Dkt. 248 at 2.

The issues are addressed in reverse order.

## I.   DISCUSSION

### A.   Komatsu's Motion to Amend is GRANTED.

Leave to amend a complaint under Federal Rule of Civil Procedure 15(a) "shall be freely given when justice so requires." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). This policy is "to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted). In determining whether to grant leave

1    under Rule 15, courts consider five factors: "bad faith, undue delay, prejudice to the

2    opposing party, futility of amendment, and whether the plaintiff has previously amended

3    the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011)

4    (emphasis added). Among these factors, prejudice to the opposing party carries the

5    greatest weight. *Eminence Capital*, 316 F.3d at 1052.

6         A proposed amendment is futile "if no set of facts can be proved under the

7    amendment to the pleadings that would constitute a valid and sufficient claim or

8    defense." *Gaskill v. Travelers Ins. Co.*, No. 11-cv-05847-RJB, 2012 WL 1605221, at *2

9    (W.D. Wash. May 8, 2012) (citing *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393

10   (9th Cir. 1997)).

11        Komatsu argues that its indemnity claims have been based on the alleged JNI

12   Broker/Carrier agreement all along and that the issue has been the subject of discovery

13   and motions practice dating to early 2020. *See* Dkt. 107. It argues that amendment would

14   not be futile and would not prejudice ETON. Dkt. 252.

15        ETON argues that it would be prejudicial to permit Komatsu to assert a

16   contractual indemnity claim and to force it to defend that claim, when it is rooted only in

17   "Komatsu's wishful thinking, conjecture, and speculation." Dkt. 238 at 2. This assertion

18   is based on ETON's continued argument that there is no evidence of a contract. ETON

19   made the same argument in its March 23, 2020 response to Komatsu's summary

20   judgment motion on its contractual indemnity claim. Dkt. 128 at 1 ("Komatsu's motion

21   argues that it has a contractual right to indemnification from Environmental

22   Transportation of Nevada []. Conspicuously absent from its motion, however, is a copy of

ORDER - 4

the contract upon which it is based."). It is also the basis for ETON's pending motion for

summary judgment. Dkt. 238 at 4–5 ("Because there is no evidence of *any* contract which

could give Komatsu indemnification rights, Komatsu has resorted to arguing that there

*must* have been a contract between Eton and JNI because it was JNI's practice to execute

one with all carriers." (emphasis in original)).

It would not be prejudicial to permit Komatsu to amend its counterclaim to

conform to the facts and claims in the case. The existence and terms of the contract have

been the subject of discovery and motions practice. ETON has a pending motion for

summary judgment on that very claim, which amply demonstrates that the claim is not

new. Nor would permitting the assertion of a contractual indemnification claim be futile;

Judge Leighton already ruled that there is a question of fact regarding the existence of a

contract supporting that claim.

Komatsu's motion to amend its counterclaim, Dkt. 248, is GRANTED.

**B.    ETON's Motion for Summary Judgment is DENIED.**

Summary judgment is proper "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In determining whether an issue of fact exists, the Court must view all evidence in the

light most favorable to the nonmoving party and draw all reasonable inferences in that

party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v.

Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where

there is sufficient evidence for a reasonable factfinder to find for the nonmoving party.

1    *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient

2    disagreement to require submission to a jury or whether it is so one-sided that one party

3    must prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden

4    of showing that there is no evidence which supports an element essential to the

5    nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant

6    has met this burden, the nonmoving party then must show that there is a genuine issue for

7    trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of

8    a genuine issue of material fact, "the moving party is entitled to judgment as a matter of

9    law." *Celotex*, 477 U.S. at 323–24. There is no requirement that the moving party negate

10   elements of the non-movant's case. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990).

11   Once the moving party has met its burden, the non-movant must then produce concrete

12   evidence, without merely relying on allegations in the pleadings, that there remain

13   genuine factual issues. *Anderson*, 477 U.S. at 248.

14      **1.      There is a question of fact regarding the Broker/Carrier Agreement.**

15      ETON argues that there is no evidence of a contract and thus no contractual

16   indemnity claim as a matter of law. Dkt. 238. It reiterates that despite the parties' efforts,

17   the broker, JNI, has been unable to produce a copy of the Broker/Carrier Agreement that

18   JNI's broker, Hatfield, insists must have been executed before JNI would award a

19   transportation job to a carrier like ETON. *Id*. at 5–7; *see also* Dkt. 146 at 12. It argues

20   that Komatsu has "inexplicably failed to produce any evidence of a contract, let alone one

21   with an applicable indemnity provision." Dkt. 238 at 8. It also relies on Moe Truman's

22

1    testimony that there was no such contract and asks the Court to dismiss Komatsu's

2    contractual indemnity claim on summary judgment.

3         Komatsu's response points out that this Court already ruled there is a question of

4    fact about the existence of a contract, Dkt. 242 at 2, and argues that since Judge

5    Leighton's Order, Dkt. 146, multiple witnesses have testified that there must have been

6    such a contract otherwise ETON would not have ever been hired to ship the excavators. It

7    argues that JNI has since explained why it cannot find a hard copy of the form

8    Broker/Carrier Agreement it continues to assert must be used before a shipment is

9    awarded to a carrier. Dkt. 242 at 4–10. Specifically, JNI's broker, Hatfield, and its owner,

10   Parrish, explained that ETON could not have even bid on a JNI load in the JNI system

11   without executing its Broker/Carrier Agreement, *id*., and that it is likely the hard copy is

12   in "hundreds of boxes" and "thousands of documents" that are stored in paper form, not

13   digitized. Komatsu also emphasizes that subsequent to Judge Leighton's summary

14   judgment order, Komatsu has learned that another shipping company owned by Moe

15   Truman, Expedite, signed a JNI Broker/Carrier Agreement. Dkt. 242 at 9 (citing Parrish

16   Decl., Dkt. 243). Komatsu also argues that ETON did produce "hundreds, if not

17   thousands" of similar broker/carrier agreements that it executed with other brokers. *Id*.

18   (citing Parrish Decl., Dkt. 243, ¶ 7).

19        In short, there is compelling evidence that ETON signed a Broker/Carrier

20   Agreement with JNI as a precondition to obtaining the shipping job. Truman's testimony

21   that ETON did not sign such an agreement may or may not be credible, but in any event

22   is insufficient to support summary judgment in ETON's favor. The Court must instead

view the evidence in the light most favorable to the non-moving party, Komatsu. As Judge Leighton already held, the existence and terms of the contract will be resolved at trial. ETON's Motion for Summary Judgment on Komatsu's contractual indemnity claim, Dkt. 238, is DENIED.

### 2.    Komatsu's Equitable Indemnity Claim is plausible.

Finally, ETON seeks summary judgment on Komatsu's equitable indemnity claim, arguing that the relationship among and between the parties does not fit Washington's "ABC Rule," which governs such claims.

In Washington, the doctrine of equitable indemnification, otherwise known as the ABC Rule, serves as an exception to the "American Rule," which bars liability for attorney fees. *Porter v. Kirkendoll*, 194 Wn.2d 194, 209–10 (2019). It permits one to recover attorneys' fees where the acts or omissions of one party to an agreement or event have exposed another party to suit by persons not connected with the initial transaction or event. *Id.* It has three elements, which give it its name: (1) A acts wrongfully toward B, (2) that wrongful act "exposes or involves B in litigation with C," and (3) "C was not connected with" A's "wrongful act . . . toward B." *Id.* at 210 (citations omitted). The critical inquiry under prong two is whether, apart from A's actions, B's own conduct caused it to be exposed or involved in litigation with C. *Id.* (internal citations omitted)

ETON argues that Komatsu's equitable indemnity claim under this ABC Rule is fatally flawed because it, (B), seeks indemnification from ETON, (A) based on the fact (A) initiated litigation against (B) and Modern Machinery, (C). In its characterization, Komatsu is seeking indemnity not because ETON's alleged negligence subjected it to

1    litigation with third parties, but because ETON filed suit against Komatsu, and that

2    litigation also involved third parties. Dkt. 238 at 10.

3         Komatsu, (B), responds that this characterization is incorrect. It argues that it

4    seeks indemnity for the damages cause by ETON's, (A's), wrongful conduct—crashing

5    the excavators into the overpass, and persuading WSDOT, (C), to sue Komatsu, (B). *See*

6    Dkt. 242 at 17–18.

7         The Court agrees. Komatsu's equitable indemnity claim under the ABC Rule is

8    not flawed based on an alignment of parties that is consistent with the requirements of

9    that rule. The ultimate, factual viability of such a claim will await trial. ETON's motion

10   for Summary Judgment on Komatsu's equitable indemnity claim based on the

11   relationship among A, B, and C, is DENIED.

12        **IT IS SO ORDERED.**

13        Dated this 14th day of December, 2021.

14

15

16                                    _____
                                     BENJAMIN H. SETTLE
17                                   United States District Judge

18

19

20

21

22